UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

Francisco J. Reyes Caparrós

    v.

Loretta Lynch, Attorney General
of the United States

Civil No. 3:15-cv-2229-JL
Opinion No. 2017 DNH 122


**MEMORANDUM ORDER**


A discovery dispute in this employment action turns on the extent to which the attorney-client and deliberative process privileges apply to communications between and among governmental agencies.  The plaintiff, Francisco Reyes Caparrós, asserts claims of discrimination and retaliation under Title VII of the Civil Rights Act, see 42 U.S.C. § 2000e-16, contending that he was constructively discharged from his job as an intelligence specialist for the United States Attorney's Office for the District of Puerto Rico.  Reyes now moves to compel production of some 56 documents[1] that the defendant has withheld as protected by some combination of the attorney-client privilege, the deliberative process privilege, and the work-product doctrine.  After reviewing the parties' submissions, and reviewing the documents themselves in camera, the court grants

---

[1] Down from much larger number of documents originally withheld.

that motion in part and denies it in part. Specifically, the court orders the defendant to produce the documents listed at the following privilege log entries: 4-8 (waiver), 13-17, 21, 27-28, 38-40, 74, 84, 95, 97-99, 104-114. The court denies plaintiff's motion as to the remaining documents, which the court concludes are protected by the attorney-client privilege, the work-product doctrine, and/or the deliberative process privilege, as discussed in more detail below.

## I.   Background

Reyes served as an intelligence specialist at the United States Attorney's Office for the District of Puerto Rico from 2009 until he resigned on February 3, 2015. He characterizes his resignation as a constructive discharge from a work environment rendered hostile by retaliation for, among other things, actions he took in 2012 and 2013 and two Equal Employment Opportunities ("EEO") complaints that he filed in 2013 and 2014.

Reyes seeks production of documents pertaining to a course of alleged retaliation beginning in the summer of 2013, when he received an invitation for an all-expense-paid trip to Russia to attend a conference sponsored by an organization led by a known Russian spy. A presentation on socialism was also found on

2

Reyes's computer.[2]  This led the Department of Justice's Office

of the Inspector General to investigate Reyes.  In connection

with this investigation, FBI agents interviewed Reyes and, while

Reyes was on furlough in October 2013, searched his office.

During and as a result of the investigation, Reyes's job duties

were changed.

In November 2013, Reyes filed a formal EEO complaint

alleging retaliation by his superiors, including, among other

things, the OIG investigation, his interrogation by the FBI, and

the placement of the socialism presentation on his computer.  He

amended his EEO complaint in early 2014 after the Acting U.S.

Attorney proposed that Reyes be suspended for one day for

negligent performance of his duties related to gathering

statistical information about firearm-related crime in Puerto

Rico.  He amended it several additional times after receiving a

negative employment evaluation and other reprimands and the

relocation of his office to the Social Security Office.

Reyes filed a second EEO complaint in November 2014, after

his supervisor required him to submit a medical certificate for

several days that he took off in October to attend doctors'

appointments.  In January 2015, his superiors declined to return

---

[2] It was later determined that someone other than Reyes placed
the presentation on his computer.

his office to its earlier location or to return him to his earlier job duties in light of the OIG investigation and pending personnel action. Concluding that retaliation and ostracism by his superiors and coworkers would only continue, Reyes resigned on February 3, 2015. He filed this action on September 2, 2015.

Reyes first challenged the defendant's privilege designations toward the close of discovery. By agreement of the parties, the court engaged its informal discovery dispute resolution process outlined in the court's order of September 8, 2016, and held a telephone conference to discuss this and other disputes on March 8, 2017. During this conference, the defendant agreed to provide Reyes with a privilege log that indicated which senders and recipients of withheld or redacted emails acted as attorneys and which acted as clients for purposes of asserting the attorney-client privilege. Reyes moved the court to review the challenged documents in camera, also pursuant to the parties' agreement and the court's order following the conference, and the defendant subsequently submitted the documents for such a review while objecting to their production.

## II. Analysis

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

4

proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). The parties here do not dispute the relevance or discoverability (in the larger Rule 26 sense) of the documents that Reyes seeks produced. The defendant contends, instead, that each of the documents is protected from disclosure by one or more of the attorney-client privilege, the deliberative process privilege, and the work-product doctrine.

The defendant's claims of privilege implicate the relative functions of several offices within the Department of Justice:

- Reyes was employed by the United States Attorney's Office ("USAO") for the District of Puerto Rico.

- During the events described above, his superiors in that office occasionally sought advice or assistance from the Department of Justice's Executive Office for United States Attorneys ("EOUSA"), which provides executive and administrative support for all United States Attorney's Offices.

- They also sought advice from the General Counsel's Office ("GCO") within the Executive Office, which provides legal advice and litigation support on a range of legal issues, including employment law, to all U.S. Attorney's Offices and the Executive Office.

- During the course of these events, attorneys within the General Counsel's Office sought assistance from another

5

section of the Executive Office, the Security and Emergency Management Staff ("SEMS"), which handles security issues for U.S. Attorney's Offices, including IT security, building security, and granting, suspending, revoking, and withdrawing security clearances.

- Finally, during the relevant period, Reyes was subject to an investigation by the Office of the Inspector General ("OIG"), an office within the Department of Justice that investigates alleged violations of criminal and civil laws by Department of Justice employees.

Most of the privilege designations that Reyes challenges concern communications between his superiors at the USAO, on the one hand, and counsel at the GCO, on the other (log nos. 1-5, 7-12, 19-20, 27-29, 38-40, 43-45, 48-49, 60, 66-67, 73, 104-105, 108, 115-116); among employees of the USAO (log nos. 6, 26, 114); between the GCO and employees of the EOUSA (log nos. 13-15, 21, 74, 84, 95, 97-99, 106-107, 109-113); and among all three of the GCO, EOUSA, and USAO (log nos. 16-18).

The defendant asserts the attorney-client privilege over all 56 challenged documents, the deliberative process privilege over 30 of them, and the protection of the work-product doctrine over 24. Before turning to specific documents, the court addresses the parties' broader arguments, which will resolve disputes as to most of these documents.

### A. Attorney-client privilege

The defendant asserts that all of the challenged documents are protected from disclosure by the attorney-client privilege. The "essential elements of the privilege," as endorsed by the First Circuit Court of Appeals, are:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002) (quoting 8 J.H. Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961)). The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). "The privilege protects 'not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs, 60 F.3d 867, 883 (1st Cir. 1995) (quoting Upjohn, 449 U.S. at 390)). "That protection ceases, or is often said to be 'waived,' when otherwise privileged communications are disclosed to a third party. The rationale is that such disclosure 'destroys the confidentiality

7

upon which the privilege is premised.'" Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 24 (1st Cir. 2011) (internal citations omitted). The defendant, as "[t]he party invoking the privilege[,] must show both that it applies and that it has not been waived." Id.

Having reviewed the parties' filings, as well as the documents in question in camera, the court concludes that the following documents are protected by the attorney-client privilege: log nos. 1-12, 18-20, 26, 29, 43-45, 48-49, 60, 66-67, 73, 115-116. These documents reflect communications between clients (employees of the USAO) and their attorneys (attorneys from the GCO) for the purpose of obtaining or providing legal advice.

As discussed more fully below, however, that protection has been waived as to the documents described at log nos. 4-8, and it never attached to the documents described at log nos. 13-17, 21, 27-28, 38-40, 74, 84, 95, 97-99, 104-114.

### 1. General Counsel's Office as "attorney"

The plaintiff argues, categorically, that the GCO cannot serve as an "attorney" for purposes of the attorney-client privilege because the "legal duty" of the EOUSA, of which it is a part, "is, generally, the 'executive assistance and supervision to the offices of the U.S. Attorneys.' That is, the

8

GCO does not have the authority to act as a lawyer in connection with a lawsuit."[3]

This position runs contrary to the Supreme Court's determination that "the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys." United States v. Jicarilla Apache Nation, 564 U.S. 162, 170 (2011). In that context, "the 'client' may be the agency and the attorney may be an agency lawyer." Tax Analysts v. I.R.S., 117 F.3d 607, 618 (D.C. Cir. 1997). Regardless of the context, however, the privilege "attaches only when the attorney acts in that capacity." Texaco, 60 F.3d at 884.

Attorneys from the GCO may act as lawyers when advising the Department of Justice and USAOs with respect to administrative proceedings, for example. In this context, the "client" is the agency -- that is, the USAO -- and the "attorney" is the agency lawyer. See Tax Analysts, 117 F.3d at 618. The privilege thus attaches to the GCO's communications with its USAO clients, as long as the other requirements, such as confidentiality, the attorney acting in that capacity, and the pursuit of legal advice, are met. As to the documents described above, they are.

---

[3] Mot. for In Camera Review (doc. no. 43) at 4-5 (quoting 28 C.F.R. § 0.22).

9

### 2. Waiver through disclosure to the Office of the Inspector General

Reyes argues that any claims of privilege over several of the documents (specifically, those described at log nos. 4-12, 29, and 38-40) were waived when the USAO disclosed those documents to the OIG, a third party, and the OIG considered and included them in its report on its investigation into Reyes' conduct.[4] Citing the Bates numbers of the OIG's report as produced, the defendant responds that only four of those documents (log nos. 4-5 and 7-8) were included in that report.[5]

The defendant bears the burden of demonstrating that this disclosure did not waive the privilege. Lluberes, 663 F.3d at 24. The defendant argues that "sending copies to the OIG, at the OIG's request, did not constitute a waiver of the attorney-client privilege because OIG, which is part of DOJ, is not a true 'third party' vis-à-vis EOUSA-USAO communications."[6] The

---

[4] Mot. for In Camera Review (doc. no. 43) at 9, 11. Document 6 amounts to a communication among clients discussing the GCO's legal advice. Reyes does not argue that it lacks protection as such, but challenges it only on the general grounds discussed above.

[5] Opposition (doc. no. 44-1) at 12, 16; Defendant's Reply Brief (doc. no. 53-1) at 2-3, 12. The court presumes this means that no other challenged documents were shared with the OIG, though the defendant has not affirmatively represented as much. If additional documents have been disclosed to the OIG, the privilege is likely waived as to those documents, and the court expects the defendant will notify it for an appropriate ruling.

[6] Opposition (doc. no. 44-1) at 12.

defendant offers no support for the proposition that the privilege, as it may exist between attorneys at the GCO and their clients at the USAO, extends to all offices within the DOJ regardless of their function with respect to the communications at hand. To the contrary, the cases the defendant cites support a finding of waiver where, as here, there is no evidence that the OIG and the USAO held a common legal interest in the communications or that they were disclosed to the OIG for assistance in providing legal advice to the USAO. See In re Keeper of Records (Grand Jury Subp. Addressed to XYZ Corp.), 348 F.3d 16, 23-24 (1st Cir. 2003) (no privilege, and thus no waiver, in communications to which third-parties are privy); Cavallaro, 284 F.3d at 250 (common interest doctrine does not prevent waiver where third party, lacking a common legal interest with respect to the communications, is made privy to them). Accordingly, the defendant waived any attorney-client privilege that attached to the documents described at log nos. 4-5 and 7-8 through their disclosure to the OIG.

Invoking Federal Rule of Evidence 502(a), Reyes argues that, through waiving the privilege as to some documents, the defendant has waived the privilege as to all documents

11

concerning the same subject matter.[7]  That rule provides that a disclosure of protected materials "to a federal office or agency" results in a waiver that "extends to an undisclosed communication or information . . . only if:  (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."  Fed. R. Evid. 502(a). The Advisory Committee Notes to that Rule explain that "a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."  Fed. R. Evid. 502 Advisory Comm. Notes, 2011 Amendment.

The defendant argues that it did not intentionally waive the privilege because the law authorized OIG to access those communications, see 5 U.S.C. App. 3 § 6(a)(1)(A), and, further, the defendant intended that the communications remain confidential despite their disclosure to the OIG.[8]  The defendant offers no support for the former proposition and, as to the

---

[7] Mot. for In Camera Review (doc. no. 43) at 7; Plaintiff's Second Brief (doc. no. 51) at 7.

[8] Opposition (doc. no. 44-1) at 11-12, 15; Defendant's Reply Brief (doc. no. 53-1) at 3-4.

latter, cites a decision addressing only whether the privilege exists, not whether it was waived. See [Kevlik v. Goldstein, 724 F.2d 844, 849 (1st Cir. 1984)](#).

Here, there is no indication that disclosure of these emails to OIG in the context of its investigation and report was in any way inadvertent. The waived communications concern the decision to refer the allegations concerning Reyes's communication with Russian entities to the OIG for investigation.[9] The only other communication relating to that particular subject matter is that described at log no. 6. The court concludes, accordingly, that the defendant has waived privilege as to that communication as well.

### 3. Communications with SEMS

Reyes challenges the attorney-client privilege designation as to several communications between employees of the GCO and SEMS concerning Reyes's security clearance and its search of Reyes's computer, electronic devices, and office (log nos. 13-15, 21, 74, 84, 95, 97-99, 106-107, 109-113). The defendant describes these as "[c]onfidential communications between GCO and EOUSA Security staff regarding," among other things, "EOUSA searching Mr. Reyes's USAO computers and handheld devices,"

---

[9] Priv. Log (doc. no. [43-1](#)) at 3; Opposition (doc. no. [44-1](#)) at 10-11.

13

"Mr. Reyes's security clearance," and "FBI's position on giving Mr. Reyes access to FBI's offices."[10]  No USAO employees sent or received these emails.  Despite characterizing the SEMS employees as "clients" on the privilege log,[11] the defendant abandons that position and argues instead that the privilege protects the GCO attorneys' communications with them because the GCO would advise its clients based on the information provided by SEMS.[12]

This argument fails on two grounds.  First, the attorney-client privilege protects communications between the attorney and the client.  Cavallaro, 284 F.3d at 245.  Here, the USAO did not participate in these communications -- as such, they are not properly "attorney-client" communications.  The defendant initially identified the EOUSA as its client for purposes of these communications, but has offered neither argument nor authority supporting that position and, in any event, appears to have abandoned it.

---

[10] See Priv. Log (doc. no. 43-1) at 5, 7, 14-15, 17-19.

[11] Id.

[12] Opposition (doc. no. 44-1) at 12 (SEMS agents were "GCO's agents and/or consultants," despite characterization as "clients" on privilege log); 21 (the SEMS employees were "EOUSA agent[s] who [were] assisting [the GCO attorney] for purposes of giving legal advice to her client.").

14

Nor has the defendant offered any authority for the proposition that an attorney's communications with a third party are protected by the attorney-client privilege when made for the purposes of obtaining information for her client.[13]  As discussed supra Part II.A.2, the privilege generally does not protect communications with or disclosed to a third party.  The defendant relies on the "exception to this general rule [that] exists for third parties employed to assist a lawyer in rendering legal advice."[14]  Cavallaro, 284 F.3d at 247.  Thus, for example, an accountant's presence "while the client is relating a complicated tax story to the lawyer" does not destroy the privilege as long as "the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit."  Id. (quoting United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)).

That is not the case here, however.  SEMS was not acting as an agent of either the attorney or the client whose presence was "necessary, or at least highly useful," for effective consultation between the GCO and the USAO.  To the contrary, as the defendant acknowledges and as the documents -- as reviewed

---

[13] Opposition (doc. no. 44-1) at 12, 14, 21-23.

[14] See id.

15

ex parte by the court -- make clear, SEMS, an independent decision-maker, was tasked with investigating Reyes and deciding whether to revoke his security clearance,[15] separate and apart from the GCO's provision and communication of legal advice to the USAO. The attorney-client privilege, accordingly, does not protect the withheld communications between the GCO and SEMS.

The privilege likewise does not protect communications between GCO attorneys and their clients at the USAO insofar as the GCO acted only to update its client as to the status of SEMS's decision about Reyes's security clearance (log nos. 104-105, 108). Those communications, as reviewed by the court, do not implicate the provision of legal advice, as the privilege requires, but merely convey an independent decision of a separate office within the Department of Justice.

Communications between the USAO and SEMS (log nos. 16-17), despite the inclusion of GCO on the email chain, lack privileged status for much the same reason. The defendant describes these as communications "to schedule a confidential conference call to discuss Mr. Reyes' security clearance and the OIG investigation."[16] As discussed above, SEMS was not acting as an

_____

[15] Defendant's Reply Brief (doc. no. 53-1) at 17 (SEMS was "the decisionmaker on the issue of Plaintiff's security clearance.").

[16] Priv. Log (doc. no. 43-1) at 6.

16

agent of the GCO in these communications or with respect to its decision whether to revoke Reyes's security clearance. As such, and as with the communications between the GCO and SEMS, the privilege does not attach to these communications.

### 4. Other documents

The defendant also asserts attorney-client privilege protection over the documents described at log nos. 27-28, 38-40, and 114. The first five of these documents (log nos. 27-28 and 38-40) reflect communications between the GCO (attorney) and the USAO (client) that do not appear to be made for the purpose of obtaining legal advice. Rather, they appear to be communications between the USAO and the GCO in the latter's capacity as an EOUSA decision-maker rather than its capacity as a legal advisor. For example, the documents described at log nos. 27-28 reflect the USAO seeking, and the GCO providing, a determination as to whether Reyes should be permitted to moonlight as a private attorney. Similarly, those described at log nos. 38-40 reflect a discussion between the GCO and USAO concerning whether the fact that Reyes possessed a CD containing other employees' tax returns should be referred to the OIG for investigation and, if so, which entity should handle that referral.

17

The document described at log no. 114 reflects communications among only USAO employees regarding whether to seek advice from the GCO -- not discussing advice <u>from</u> GCO. Insofar as no GCO attorney participated in that communication, it is not protected by the attorney-client privilege. Indeed, the defendant has produced other documents of a similar nature.[17]

## B. Work product doctrine

The defendant asserts the protection of the work product doctrine over a variety of emails sent after the USAO was on notice of Reyes's intent to file, or after Reyes had already filed, an administrative complaint under Title VII (log nos. 21, 38-40, 74, 84, 95, 97-99, 104-114).[18] The defendant contends that they were thus prepared in anticipation of litigation.

"[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ." Fed. R. Civ. P. 26(b)(3)(A). Under the standard set by the First Circuit Court of Appeals, the work product doctrine protects

---

[17] <u>See,</u> <u>e.g.,</u> Bates no. 3718-19.

[18] <u>See</u> Opposition (doc. no. 44-1) at 14-16, 18, 21-22. The defendant also asserts work-product protection over the documents described at log nos. 26, 43-45, 48-49, 60, 66-67, 73, and 115-116. Priv. Log (doc. no. 43-1) at 11, 13-14, 20. The court concluded, <u>supra</u> Part II.A, that these communications are protected by the attorney-client privilege, and so does not address the work-product claim.

18

documents that are "prepared for any litigation or trial as long as they were prepared by or for a party to the subsequent litigation." United States v. Textron Inc. & Subsidiaries, 577 F.3d 21, 29 (1st Cir. 2009) (en banc) (quoting Federal Trade Commission v. Grolier Inc., 462 U.S. 19, 25 (1983)). Under that rule's converse, "work product protection does not extend to 'documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation.'" Id. at 30 (quoting Maine v. U.S. Dep't of Interior, 298 F.3d 60, 70 (1st Cir. 2002)).

As discussed supra Parts A.3-4, the attorney-client privilege does not attach to the documents described at log nos. 21, 38-40, 74, 84, 95, 97-99, and 104-114, which concern the OIG investigation, the FBI investigation, and SEMS's decision on whether to revoke Reyes's security clearance. The court therefore considers whether, as the defendant contends, the work-product doctrine protects them from disclosure.

The defendant asserts the work-product protection over these documents on the sole ground that Reyes was about to file, or had in fact filed, one or both of his EEO complaints at the time of those communications. That is, though asserting the documents were prepared in anticipation of litigation, the defendant does not explain how that administrative proceeding,

19

or threat thereof, caused the documents to be generated.[19] And it is not apparent to the court, which has reviewed the documents themselves in camera, how the communications concerning the OIG investigation or Reyes's security clearance were prepared for, or even because of, those proceedings.

The mere fact that the GCO or USAO anticipated an administrative complaint from Reyes, or that Reyes had filed such complaints, does not automatically protect communications that would have been created regardless of Reyes's administrative actions -- as it appears that the majority of these documents would have been. This applies particularly to the GCO's communications with SEMS,[20] which, as discussed supra Part II.A.3, was acting as a separate and distinct decisionmaker -- not the GCO's agent -- when rendering its decision on Reyes's security clearance. Accordingly, the defendant has not carried the burden of explaining how these documents were "prepared for any litigation or trial," as required by Textron, 577 F.3d at 29.

---

[19] See Opposition (doc. no. 44-1) at 14-16, 18, 21-22. The defendant also relies on the declarations of Attorneys Jay Macklin and Sobia Haque in support of this position. They offer only the same rote justifications, however. See Macklin Decl. ¶ 18(g)-(h); Haque Decl. ¶ 12(a), (c), (g).

[20] Log nos. 21, 74, 84, 95, 97-99, 106-107, and 109-113.

## C.    Deliberative process privilege

The defendant invokes the deliberative process privilege in withholding the documents described at log nos. 4-8, 13-18, 29, 38-40, 66-67, 74, 84, 95, and 104-113.  "The deliberative process privilege shields from public disclosure confidential inter-agency memoranda on matters of law or policy.  The privilege rests on a policy of affording reasonable security to the decisionmaking process within a government agency."  Texaco, 60 F.3d at 884 (internal quotations and citations omitted).  "It facilitates government decision making by:  (1) assuring subordinates will feel free to provide uninhibited opinions, (2) protecting against premature disclosure of proposed government policies, and (3) preventing confusion among the public that may result from releasing various rationales for agency action."  New Hampshire Right to Life v. U.S. Dep't of Health & Human Servs., 778 F.3d 43, 52 (1st Cir.), cert. denied, 136 S. Ct. 383 (2015) (quoting Providence Journal Co. v. United States Dep't of Army, 981 F.2d 552, 557 (1st Cir. 1992)).

This privilege "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  Sensor Sys. Support, Inc. v. F.A.A., 851 F. Supp. 2d 321, 328 (D.N.H. 2012) (Barbadoro, J.) (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866

(D.C. Cir. 1980)).  It applies not only to "the development of generally applicable policy," but also, as relevant here, "to protect materials that concern individualized decisionmaking . . . ."  Hinckley v. United States, 140 F.3d 277, 284 (D.C. Cir. 1998); see also Providence Journal, 981 F.2d at 557-59 (recommendations for disciplinary action against Army officers protected).

To qualify for its protections, "a document must be (1) predecisional, that is, 'antecedent to the adoption of agency policy,' and (2) deliberative, that is, actually 'related to the process by which policies are formulated.'"  Texaco, 60 F.3d at 884 (quoting National Wildlife Fed'n v. United States Forest Serv., 861 F.2d 1114, 1116 (9th Cir. 1988)).

> A document is "predecisional" if the agency can
> (1) "pinpoint the specific agency decision to which
> the document correlates;" (2) "establish that its
> author prepared the document for the purpose of
> assisting the agency official charged with making the
> agency decision;" and (3) "verify that the document
> precedes, in temporal sequence, the decision to which
> it relates."  A document is "deliberative" if it:
> (1) "formed an essential link in a specified
> consultative process;" (2) "reflects the personal
> opinions of the writer rather than the policy of the
> agency;" and (3) "if released, would inaccurately
> reflect or prematurely disclose the views of the
> agency."

Sensor Sys. Support, 851 F. Supp. 2d at 328 (quoting Providence Journal, 981 F.2d at 557, 559).

This privilege is not absolute, but rather is "a discretionary one." Texaco, 60 F.3d at 885. In deciding how to exercise that discretion, the court considers "the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." Id. Courts routinely deny the privilege "where the documents sought may shed light on alleged government malfeasance . . . ." Id. (quoting Franklin Nat'l Bank Sec. Litig., 478 F. Supp. 577, 582 (E.D.N.Y. 1979)).

In that vein, several courts have concluded that, "where the decision-making process itself is the subject of the litigation, it is inappropriate to allow the deliberative process privilege to preclude discovery of relevant information." Velazquez v. City of Chicopee, 226 F.R.D. 31, 34 (D. Mass. 2004) (internal citations and quotations omitted); see also Grossman v. Schwarz, 125 F.R.D. 376, 384 (S.D.N.Y. 1989) (deliberation leading to administrative decision which plaintiff alleged amounted to retaliation not protected). Thus, "[i]f the plaintiff's cause of action is directed at the government's intent," as it is in, for example, an action under Title VII, "it makes no sense to permit the government to use the privilege as a shield." In re Subpoena Duces Tecum Served on Office of Comptroller of Currency, 145 F.3d 1422, 1424 (D.C. Cir.), on reh'g in part, 156 F.3d 1279 (D.C. Cir. 1998).

23

As an initial matter, as the plaintiff observes, the defendant's claims of attorney-client privilege and deliberative process privilege over the same communications appear inconsistent. A communication may be for the purpose of obtaining legal advice, as the former privilege requires, or it may constitute part of the policy-making process, as the latter does, but it is difficult to conceive of a communication that falls into both categories. See In re Lindsey, 158 F.3d 1263, 1270 (D.C. Cir. 1998) ("advice on political, strategic, or policy issues . . . would not be shielded from disclosure by the attorney-client privilege"). Regardless, to the extent that the court concludes, as it has supra Part II.A, that several of these documents are protected by the attorney-client privilege,[21] and thus need not be produced on those grounds, it need not address them under the deliberative process privilege.

The plaintiff then levels two challenges against the defendant's assertion of the deliberative process privilege: first, that the defendant had a "[c]omplete failure to comply with the required [deliberative process] protection showing" as

---

[21] Specifically, those described at log nos. 4-8, 18, 29, and 66-67. Insofar as the court concludes that privilege was waived as to the documents described at log nos. 4-8, the court does address those below.

24

to all of these allegedly-privileged documents[22] and, second, that some of those documents reflect "the subject matter of this litigation"[23] and thus forego protection.

As to the first charge, the defendant bolsters the deliberative process privilege showing while objecting to the plaintiff's motion by identifying, as to each document:  (1) the decision to which it relates; (2) that the communication predated the decision; and (3) that each communication was deliberative.  The court is underwhelmed by the defendant's showings as to the deliberative process privilege and is skeptical that many of the communications are, in fact, "deliberative" under the standard set forth in Providence Journal, 981 F.2d at 559.  Indeed, despite the defendant's categorical and unsupported argument, several of them clearly

---

[22] See Mot. for In Camera Review (doc. no. 43) at 9-13.  The plaintiff does not explicitly challenge log nos. 106-107 on these grounds, likely because the defendant neglected to indicate deliberative process protection as grounds for withholding on the privilege log.  See Priv. Log (doc no. 43-1) at 18; Defendant's Reply Brief (doc. no. 53-1) at 22 n.7 (omission of "DP" from basis for withholding column inadvertent).  Insofar as the defendant did note that these documents were "[p]re-decisional and deliberative," id., the court treats them as withheld on those grounds and, further, presumes the plaintiff lodges the same objections.

[23] Mot. for In Camera Review (doc. no. 43) at 10-13.  Plaintiff challenges all of the documents withheld under the deliberative process privilege on these grounds except log nos. 4-8.  See id. at 9; Plaintiff's Second Brief (doc. no. 51) at 12-13.

25

are not. These include communications about the status, rather than the content, of the OIG's investigation of Reyes[24] and SEMS's decision on Reyes's security clearance,[25] as well as communications that contain no opinion at all.[26] These communications thus do not appear to "form[] an essential link" in the deliberative process or "reflect[] the personal opinions of the writer." Providence Journal, 981 F.2d at 559. Nor, if released, do they appear likely to "inaccurately reflect or prematurely disclose the views of the agency." Id. Accordingly, the documents described at log nos. 4, 7-8, 74, 84, 95, and 104-113 are not protected by the deliberative process privilege.

As to the documents that may, at least arguably, be deliberative,[27] the plaintiff is correct that they touch on some of the decisions that Reyes alleges amount to retaliation and thus are related to the subject of this litigation. Specifically, Reyes has raised a claim of constructive discharge based on retaliation. He alleges that his superiors at the USAO "encouraged an OIG investigation into his conduct" concerning

---

[24] Log nos. 74, 84, 95.

[25] Log nos. 104-113.

[26] Log nos. 4, 7-8.

[27] Log nos. 5-6, 13-17, 38-40.

the invitation to a conference in Russia and the presentation found on his computer" in retaliation for various actions he undertook.[28]  He makes similar allegations about his questioning by the FBI and their restriction of his office.[29]  The communications described by log nos. 5-6, 13-17, and 38-40 relate to the reasons for and findings of the OIG investigation. As such, they shed light on the defendant's intent, an issue squarely implicated by the plaintiff's retaliation claim. Accordingly, the deliberative process privilege does not shield them.

## III.  <u>Conclusion</u>[30]

Plaintiff's motion[31] is GRANTED-IN-PART and DENIED-IN-PART as follows:

- The documents described at log nos. 1-12, 18-20, 26, 29, 43-45, 48-49, 60, 66-67, 73, 115-116 are protected

---

[28] Compl. (doc. no. 1) ¶ 10.5.

[29] <u>Id.</u> ¶¶ 10.10, 10.13-10.16.

[30] The plaintiff also moved to compel the defendant's responses to interrogatories and production of documents in response to discovery requests served shortly before the close of discovery. Mot. for In Camera Review (doc. no. 43) at 14.  The defendant's agreement to respond to those requests, <u>see</u> Opposition (doc. no. 44-1) at 1 n.2, moots that request.

[31] Doc. no. 43.

from disclosure by at least the attorney-client privilege.

- The documents described at log nos. 4-8, 13-17, 21, 27-28, 38-40, 74, 84, 95, 97-99, 104-114 are not protected and must be produced to plaintiff on or before **June 19, 2017.**

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:    June 15, 2017

cc:  Bamily Lopez-Ortiz, Esq.
     Christine J. Wichers, Esq.

28